### ARGONNE APARTMENT HOUSE CO. v. GARRISON.

### No. 4911.

Court of Appeals of District of Columbia.

Submitted March 4, 1930.

Decided June 9, 1930.

Chapin B. Bauman, of Washington, D. C., for plaintiff in error.

Norman Fischer, of Washington, D. C., for defendant in error.

Before MARTIN, Chief Justice, VAN ORSDEL, Associate Justice, and GORDON, Associate Justice of the Supreme Court of the District of Columbia.

GORDON, Associate Justice of the Supreme Court of the District of Columbia.

This cause is brought here on writ of error to the municipal court of the District of Columbia to review the action of that court in a suit for damages wherein a judgment was rendered in favor of the defendant in error.

The defendant in error (the plaintiff below), by her declaration, filed October 20, 1927, alleges that she was a guest of one Ralph P. Cousins, a lessee of the plaintiff in error (the defendant below) of an apartment at the Argonne Apartment House in this District, operated by the defendant, and that on December 1, 1926, the defendant had in its employ certain agents and servants; that certain electrical repairs or adjustments had become necessary in the apartment of the said Cousins, and the defendant through its said agents and servants assumed control over the repairs, and entered in and upon the apartment of the said Cousins; that it was the duty of the defendant, its agents, and its servants to exercise due and reasonable care in the conduct of the repairs, with due consideration for the safety of the property of the lessee and the plaintiff, the lessee's guest; that, disregarding its duty in that respect, the defendant by its agents and servants carelessly and negligently employed a servant or agent who was incompetent and dishonest, and sent said servant to the Cousins apartment for the purpose of making certain electrical repairs; that said servant or agent then and there, during the repairs, gained possession of and removed therefrom certain valuable articles of jewelry of the value of $685, and that by reason thereof the plaintiff suffered a loss in that amount, the value of the articles stolen, which would not have occurred had the defendant exercised reasonable and due care in the employment of its help and in the conduct of the repair work, and she therefore claims damages in the sum of $685 and costs.

The defendant pleaded the general issue, plea of not guilty, and also of contributory negligence.

At the trial before the court and a jury the facts established were, in substance, as follows:

On December 1, 1926, while plaintiff was spending a few days as the guest of Mr. and Mrs. Cousins in their apartment in the Argonne Apartment House, that they had leased from the defendant, which owned and operated the same, Mrs. Cousins requested the manager of the apartment house to install an electric socket in the baseboard of one of the bedrooms of the Cousins apartment, and the manager, as requested, sent two men to perform that service. While the plaintiff and Mrs. Cousins were in the bedroom, the latter showed the men where she desired to have the socket installed, which was alongside the chifforobe, on the top of which the plaintiff had left her jewelry, and plaintiff and Mrs. Cousins then retired to the living room of the apartment. One of the men who came to the apartment was an old trusted employee of the defendant, and both plaintiff and Mrs. Cousins had seen him around the apartment house, and knew him to be trustworthy. The other man was a stranger whom they had never seen before. After the two men had been at work for about fifteen minutes Jackson, the old employee, left the new man, Johnson, in the bedroom alone. Half an hour later the plaintiff and Mrs. Cousins saw the other man, Johnson, leave, and, upon entering the bedroom shortly thereafter, they discovered that the plaintiff's jewelry had been stolen. In a dresser drawer in the same bedroom other valuable jewelry owned by Mrs. Cousins was not disturbed. Johnson, the new man, had been employed in the latter part of November, 1926, after a fire in the basement of the apartment house, causing damage to a part of the awnings, which had necessitated the employment of additional help. Johnson had applied for the employment in response to an advertisement of the defendant in one of the local newspapers. He and other applicants were interviewed by the treasurer of the company, who required them to exhibit written references. Johnson furnished at least two or three such references, which were written on business letterheads, and which appeared to such officer of the company to be satisfactory, and he and three other ap-

plicants were put to work at the apartment house. The officer who employed this additional help told the resident manager, Mr. Wood, to observe the conduct of these men with a view of employing one of them permanently. He did not telephone or attempt to communicate with the persons who were represented to have signed the letters recommending Johnson or make any further inquiry regarding Johnson's honesty or ability. He said the references appeared to be all right or he would not have employed Johnson. Four or five days later Mr. Wood assigned Johnson as helper to the electrician, Jackson. After the theft was reported to the police, an investigation disclosed that Johnson, on November 1, 1926, had pleaded guilty in the police court to a charge of intoxication, and had been sentenced to pay a fine of $15, and in default of the payment had been committed to jail for fifteen days. Previous to that Johnson had resided with his mother and sister in the city.

Mrs. Cousins testified that the day after the jewelry was stolen she met Mr. Wood, who expressed his sorrow at the loss, and said that he would do all that he could to find the man who took the jewelry, and that "Jackson had been instructed to stay with the new man." Mr. Wood testified that he recalled meeting Mrs. Cousins the day after the theft, and expressed to her his regret that Mrs. Garrison had lost her jewelry, but denied that he told Mrs. Cousins that he had instructed Jackson, the electrician, to stay with the man Johnson.

At the close of the plaintiff's case, the defendant moved the court to direct a verdict for the defendant on the grounds that the plaintiff had not proved a cause of action against the defendant; that there had been no proof of negligence on the part of the defendant; that the plaintiff was guilty of negligence as a matter of law; and that it was plaintiff's negligence that was the proximate cause of the loss. The court overruled this motion, and the defendant noted an exception to the ruling.

And at the close of the defendant's case it again moved the court for a directed verdict on the whole of the evidence, which motion was overruled and an exception noted.

Thereupon the jury returned a verdict for the plaintiff in the sum claimed, and, after a motion for a new trial had been heard and overruled, judgment was entered March 9, 1928, for the plaintiff for $685, with interest from that date and costs.

In submitting the case to the jury the court, at the request of the plaintiff, granted the following prayer: "The jury are instructed as a matter of law that if they believe from the evidence that a theft or other tortious act occurred through the act of the servant or employee of the defendant, and that the defendant was guilty of negligence in selecting and hiring the particular servant or employee to enter into and work in the apartments leased to the defendant's tenants, then they shall bring in a verdict for the plaintiff."

The court refused defendant's prayer for a directed verdict in its favor, to which an exception was noted, but did grant three prayers of the defendant as follows: "The jury are instructed as a matter of law that the defendant is not an insurer, nor is the defendant liable for the thefts or other tortious acts of its servants or employees, unless the same are committed in furtherance of the defendant's business, and therefore, in order to find for the plaintiff, you must find from all of the evidence that the defendant was guilty of negligence in selecting the particular servant or employee who stole the plaintiff's jewelry, and in determining the question of negligence you are further instructed that negligence in this case must consist in the failure of the defendant to use that degree of care in the selection of its servant or employee which a reasonably prudent man would have exercised under the same or similar circumstances."

And: "The jury are instructed as a matter of law that even though you find from all the facts in evidence that the defendant was guilty of negligence, nevertheless, if you find that the plaintiff was also guilty of negligence and that the loss would not have occurred but for the plaintiff's negligence, then your verdict shall be for the defendant. And in determining the question of the plaintiff's negligence it is for you to decide whether the plaintiff used that degree of care that a reasonably prudent person would have used under the same or similar circumstances."

And: "The jury are instructed as a matter of law that the burden of proving negligence is on the plaintiff."

Defendant's (plaintiff in error) assignment of errors is summarized as follows: (1) That the court erred in overruling the defendant's motion for a directed verdict in its favor at the close of the plaintiff's case, because (a) the plaintiff had not proved a cause of action against the defendant, (b) the plaintiff failed to prove any negligence on the part of the defendant, and (c) the plain-

tiff was guilty of contributory negligence as a matter of law, and it was the plaintiff's negligence which was the proximate cause of the loss, (2) that the court erred in overruling defendant's motion for a directed verdict in its favor on the whole evidence, on the ground of failure of proof stated in No. 1 of this summary of errors assigned; (3) that the court erred in refusing defendant's prayer for instruction to the jury No. 1; (4) that the court erred in admitting in evidence over its objection the lease between Cousins and the defendant.

As a general rule, it may be stated that negligence is a fact which must always be proved and will never be presumed and cannot be inferred from the injury or other act complained of alone.

The evidence shows that the defendant required the employee to submit written recommendations, and Johnson presented at least two or three, such recommendations written on business letterheads of the writers, and these appeared to the defendant to be all right, and it was after reading these recommendations and a talk with Johnson that the defendant thought that Johnson would be satisfactory, and thereupon employed him. It cannot be inferred or assumed that these recommendations were not bona fide or that they were bogus. There was no evidence to show that a further investigation would have disclosed sufficient facts to put the defendant on notice as to the dishonesty of Johnson.

It is immaterial whether or not Mr. Wood had stated to Mrs. Cousins after the theft that "Jackson had been instructed to stay with the new man," as such a statement would suggest natural cautiousness rather than a suspicion of dishonesty. The fact that an investigation made by the police after the jewelry had been stolen showed that the employee some time prior thereto had been convicted of intoxication does not suggest that such person was dishonest, and, even though the employer had knowledge that an employee had been convicted of such a charge, that would not in itself put the employer on notice as to the dishonesty of such employee.

As the court views the evidence, there was no proof of negligence on the part of the defendant in employing Johnson, and therefore the trial court erred in not granting the motions of the defendant at the close of the plaintiff's case and also upon the whole evidence; and in the refusal of the defendant's first prayer, for a directed verdict in its favor.

In this situation, while we have considered the other questions presented in the assignment of errors, we do not deem it necessary to comment upon or decide them.

The motions for a directed verdict should have been sustained.

The judgment is reversed, with costs, and the cause is remanded for further proceedings not inconsistent with this opinion.