Robert V. NEARY, Plaintiff,

v.

The HERTZ CORPORATION, Bernard H. Taff and District Certified TV Service, Inc., Defendants.

Civ. A. No. 1528–60.

United States District Court
District of Columbia.

June 29, 1964.

Landon G. Dowdey, Washington, D. C., for plaintiff.

Paul J. Sedgwick, Washington, D. C., for defendant Hertz Corp.

Frederick H. Livingstone, Washington, D. C., for defendant District Certified TV Service, Inc.

HART, Judge.

This is a suit to recover for personal injuries.

At trial the following facts were undisputed:

In the 1300 block of Shepherd Street, N.E., on October 7, 1959, at about 10:15 P.M., an unoccupied, parked automobile owned by the plaintiff was struck by a panel truck, owned by the defendant Hertz Corporation and leased to the defendant District Certified TV Service, Inc., doing substantial damage to plaintiff's vehicle. An employee of District Certified TV Service, Inc., one George Singleton, was the driver of the truck.

Singleton did not stop and identify himself at the scene of the collision. Attracted by the noise of the collision, plaintiff and a friend of his emerged from the friend's house near the scene of the accident, got into the plaintiff's automobile and pursued the panel truck which was then some distance down Shepherd Street.

After a winding chase of several blocks, plaintiff sufficiently closed with the fleeing truck so that he could and did ascertain the license number and distinctive markings of District Certified TV Service, Inc., which were on the truck.

The pursuit continued and several blocks farther, while both vehicles were stopped at a red traffic light, plaintiff called to Singleton that he had struck plaintiff's automobile. Singleton took off and the pursuit continued again. Each time the plaintiff attempted to overtake the truck, the truck shifted lanes, thus preventing an overtaking. At the intersection of Michigan Avenue and Kenyon St., N.W., the truck brushed by Officer Thomas Jackson, a foot patrolman of the Metropolitan Police Department, so closely that Officer Jackson was thrown to the ground. Arriving momentarily at the scene, plaintiff invited Officer Jackson to join in the pursuit. With the Officer in the back seat of plaintiff's car, the chase was again joined. After winding through various streets, along which both vehicles exceeded the speed limit, and ran red traffic signals and stop signs, the vehicles turned onto Park Road, N.W., a one-way street at that point. The pursued truck was in the left lane, the pursuer in the right. On Park Road between 14th and 16th Streets, N.W., just as the plaintiff pulled even with the fleeing truck, the truck swerved into plaintiff's car, driving it up onto the right-hand curbing. The chase continued. Turning into a driveway near the corner of Park Road and 16th Street, N.W., Singleton alighted from the truck and ran on foot. Officer Jackson, emerging from the plaintiff's car, which had followed the truck into the driveway, continued the chase on foot. His way blocked by a

fence, Singleton turned and struck at Officer Jackson with a metal stanchion. Singleton was shot once by the Officer. Even so, he climbed the fence, and continued running. He was shot again, fell, and finally the chase ended. (Here ends the undisputed facts.)

Plaintiff alleges that, when his car was forced upon the curb on Park Road, his knee was injured. Plaintiff sought damages for this injury against the Hertz Corporation, as owner, under D.C.Code § 40–424; against District Certified TV Service, Inc., on the theory of respondeat superior, and against Bernard H. Taff, the manager of District Certified TV Service, Inc. In the course of the plaintiff's case, it developed that six weeks prior to October 7, the Hertz Corporation had, pursuant to provisions in the lease, notified its lessee, District Certified TV Service, Inc., that Singleton must no longer be permitted to drive the Hertz truck, thus rebutting the presumption created by D.C.Code § 40–424 that Singleton was the agent of Hertz and requiring, in the absence of some further showing by the plaintiff, a directed verdict as to Hertz. Jones v. Halun, 111 U.S.App.D.C. 340, 296 F.2d 597 (1961). Nothing appeared in the plaintiff's case to indicate that Taff was personally liable. Therefore, at the end of the plaintiff's case, verdicts were directed for the Hertz Corporation and for Bernard Taff, leaving District Certified TV Service, Inc., as sole defendant.

By way of defense, District Certified TV Service, Inc., alleged that Singleton had no authority to drive the Hertz truck, alleging that, in fact, Singleton had been specifically instructed by Taff, the manager, not to drive it; that Singleton was not delivering TV sets on the evening of October 7, when the plaintiff's parked car was struck; that, even if he had been, his flight after the collision on Shepherd Street took him outside the scope of his employment; and finally, that plaintiff was contributorily negligent.

In order to alleviate the possible confusion which might arise in the minds of the Jury regarding the application of contributory negligence principles if the Jury should find that Singleton's swerving on Park Road was due to negligence but the non-application of such principles if they should find his swerving intentional, and in order to simplify the question of whether Singleton was acting within the scope of his employment, the following Special Interrogatories were submitted to the Jury:

"1. On the evening of October 7, 1959 at about 10:15 P.M., was Singleton driving the Volkswagen belonging to The Hertz Corporation contrary to express instructions by District Certified TV Service, Inc., not to drive said vehicle?

Answer————————
(Yes or No)

"2. On the evening of October 7, 1959, at about 10:15 P.M., was Singleton about the business of collecting and/or delivering television sets of customers of the defendant District Certified TV Service, Inc?

Answer————————
(Yes or No)

(NOTE: If the Jury answers Question No. 2 'No,' the Jury need not answer the subsequent questions.)

"3. Was the impact of the plaintiff's car and the Volkswagen truck on Park Road at about 10:30 P.M., on October 7, 1959, due to the intentional swerving of the Volkswagen truck by Singleton into the plaintiff's car?

Answer————————
(Yes or No)

(NOTE: If the answer to Question No. 3 is 'Yes', the Jury need not answer Questions 4, 5, 6 and 7. If the answer to this question is 'No', the Jury must answer Questions 4, 5, 6 and 7.)

"4. Was the impact of the plaintiff's car and the Volkswagen on Park Road at about 10:30 P.M., on October 7, 1959, due to the negligent

operation by Singleton of the Volkswagen?

Answer————————

"5. If the Answer to Question No. 4 is 'Yes', was Singleton's negligence a proximate cause of any injuries to plaintiff?

Answer————————

"6. Was the impact between the Volkswagen driven by Singleton and the plaintiff's car on Park Road due in part to contributory negligence on the part of the plaintiff?

Answer————————
(Yes or No)

"7. If the answer to Question No. 6 is 'Yes', was the contributory negligence of the plaintiff a proximate cause of any injury to the plaintiff?

Answer————————
(Yes or No)

"8. What damages do you fix under the instructions of the Court as to damages for any injuries sustained by plaintiff in the impact between the Volkswagen and plaintiff's car on Park Road?

Answer————————
"Date:——————————
————————————————

Foreman"

After deliberation, the Jury returned an answer of "No" to Question #1; "Yes" to Questions #2 and #3, and set the damages at $6,750.00, thus resolving the remaining disputed facts with a finding that Singleton at the time of the first collision was about the business of District Certified TV Service, Inc., that Singleton intentionally assaulted the plaintiff and that $6,750 would properly compensate the plaintiff for the injuries suffered by him as a result of the impact between plaintiff's car and the truck on Park Road.

With all the contested facts settled by the Jury, it remains for the Court to determine whether Singleton's employer, the defendant District Certified TV Service, Inc., is liable for the tort committed by Singleton in assaulting plaintiff with the truck on Park Road.

The rule governing the liability of an employer for an employee's intentional tort appears to have been first set forth in this jurisdiction in Axman v. Washington Gaslight Co., 38 App.D.C. 150 (1912). After considering many cases on the subject, the Court said (at 158):

"In the light of these adjudications, we conceive the true test in measuring the principal's responsibility, to be whether the act of the agent was done in the prosecution of the business either impliedly or expressly intrusted to the agent by the principal. If it was, the principal is responsible for the manner in which the agent executed his commission, even if he acted wantonly, recklessly, or against orders. He represented his principal, and what he did was for the benefit of his principal. If his recklessness or lack of judgment caused loss or damage, it is only just that the one who selected and commissioned him should be held accountable therefor. Of course, the moment the agent turns aside from the business of the principal and commits an independent trespass, the principal is not liable. The agent is not then acting within the scope of his authority in the business of the principal, but in the furtherance of his own ends."

The District of Columbia Code, § 40–609(a) imposes a duty upon the operator of any vehicle who shall do substantial damage therewith to stop and give certain information. Thus, when the truck operated by Singleton struck plaintiff's vehicle, doing substantial damage thereto, it became the duty of Singleton to stop and give the information required by § 40–609(a) of the Code.

From this it follows that, if, at the scene of the collision on Shepherd Street, Singleton had committed an assault in the course of giving the information required by statute, the assault would have been within the scope of his

484

employment and his employer would be liable under the authority of Dilli v. Johnson, 71 App.D.C. 139, 107 F.2d 669 (1939).

█ But the assault did not occur under these circumstances, and so an additional point must be considered before rendering a judgment. Did the flight, involving as it did a chase of several miles over a period of 15 to 30 minutes, constitute a turning aside from the business of the principal so that the assault is an independent trespass for which the principal is not liable?

I hold that it did not. As long as the owner of the automobile which Singleton struck on Shepherd Street continuously sought the identification data which Singleton was required by § 40-609(a) to give, the duty imposed upon Singleton by that statute continued. Whether that duty would terminate when a driver leaves the scene of the collision if he were not pursued by one to whom he is required to give information, or whether conduct on the part of a driver who was later accosted after escape had been successfully made would be chargeable to the employer is not the question here. Because the owner of the damaged vehicle immediately and continuously was present and seeking the information which Singleton was required to give as part of his duty as a vehicle driver, Singleton continued to represent his principal during the flight.

Rather than constituting a turning aside from the principal's business, the flight in this case is an essential link in the unbroken chain of events which require that the assault be considered as "done in the prosecution of the business * * * intrusted to the agent by the principal." Axman v. Washington Gaslight Co., supra. Although Singleton "may have been acting wantonly and contrary to his employer's interests, it is still true that he committed [the] assault while engaged on the master's business." Ogilby v. Eskey, 121 A.2d 265 (D.C.Mun. App., 1956); accord, Dilli v. Johnson, 71 App.D.C. 139, 107 F.2d 669 (1939).

The Clerk will enter judgment for the plaintiff against the defendant District Certified TV Service, Inc., in the amount of $6,750.00, with interest and costs.